HUMES, P. J.,
Concurring and Dissenting. — Jennell Renee Wright shot Le’Mar Green while he was sitting in his car, minding his own business. The two had had no direct interaction for two and a half days before the shooting, and the only reason they were together at the time of the shooting was because Wright drove herself to Green’s residence, parked her car outside, and waited for him to return home from work. The majority concludes that the trial court erred by not giving heat-of-passion and provocation instructions because of the evidence presented about the estranged couple’s acrimonious history, which included conflicts about child rearing and custody. According to the majority, Wright could have shot Green in a heat of passion or without premeditation as a result of provocation that “developed over a ‘provocatory’ period.” (Maj. opn., ante, at p. 1486.) Although I agree that a course of provocatory conduct can give rise to the need for such instructions in some circumstances, I disagree that those circumstances are present here. I therefore do not believe the trial court erred.
The duty to instruct on the heat-of-passion form of voluntary manslaughter or to give “a [requested] pinpoint instruction on the effect of provocation” on *1499 the degree of murder arises when substantial evidence is presented to support such an instruction. (People v. Ward (2005) 36 Cal.4th 186, 214 [30 Cal.Rptr.3d 464, 114 P.3d 717]; see People v. Breverman (1998) 19 Cal.4th 142, 162 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) Only the “bare legal sufficiency” — not the weight — of the evidence is considered. (Breverman, at p. 177.) Still, “ ‘the existence of “any evidence, no matter how weak” will not justify instructions on a lesser included offense [or a pinpoint instruction on provocation], [and] such instructions are required [only] whenever [the] evidence ... is “substantial enough to merit consideration” by the jury.’ ” (People v. Moye (2009) 47 Cal.4th 537, 553 [98 Cal.Rptr.3d 113, 213 P.3d 652], original italics; see People v. Marshall (1997) 15 Cal.4th 1, 39 [61 Cal.Rptr.2d 84, 931 P.2d 262].)
Substantial evidence of provocation may require jury instructions on voluntary manslaughter, the effect of provocation on the degree of murder, or both, depending on the nature of the provocation. For a killing to be reduced to voluntary manslaughter, both “ ‘provocation and heat of passion must be affirmatively demonstrated.’ ” (People v. Steele (2002) 27 Cal.4th 1230, 1252 [120 Cal.Rptr.2d 432, 47 P.3d 225], original italics; see Pen. Code, §§ 188, 192, subd. (a).) First, there must be evidence that the defendant actually killed in a heat of passion. (People v. Beltran (2013) 56 Cal.4th 935, 951 [157 Cal.Rptr.3d 503, 301 P.3d 1120].) This subjective component is not met “[i]f sufficient time has elapsed for one’s passions to ‘cool off’ and for judgment to be restored.” (Ibid.) Second, there must be evidence of provocation that would have “render[ed] an ordinary person of average disposition [in the defendant’s position] ‘liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment.’ ” (Id. at p. 957.) The provocation “must be caused by the victim [citation], or be conduct reasonably believed by the defendant to have been engaged in by the victim.” (People v. Lee (1999) 20 Cal.4th 47, 59 [82 Cal.Rptr.2d 625, 971 P.2d 1001].) The objective test for adequate provocation is not whether the victim’s conduct would have moved an ordinary person to kill but whether it “would cause an emotion so intense that an ordinary person would simply react, without reflection. . . . [T]he anger or other passion must be so strong that the defendant’s reaction bypassed [his or her] thought process to such an extent that judgment could not and did not intervene.” (Beltran, at p. 949, original italics.) A person who kills with such a state of mind “lacks malice and is guilty not of murder but of the lesser offense of voluntary manslaughter.” (People v. Lasko (2000) 23 Cal.4th 101, 108 [96 Cal.Rptr.2d 441, 999 P.2d 666].)
When evidence of some provocation is presented, but it is insufficient to support a conviction of voluntary manslaughter because the provocation “would not [have caused] an average person to experience deadly passion” (People v. Hernandez (2010) 183 Cal.App.4th 1327, 1332 [107 Cal.Rptr.3d *1500 915]), a killing may still be reduced from first to second degree murder if the provocation “played a role in preventing the defendant from premeditating and deliberating” (People v. Rogers (2006) 39 Cal.4th 826, 880 [48 Cal.Rptr.3d 1, 141 P.3d 135]). For an instruction to be required on provocation’s effect on the degree of murder, “the evidence of provocation [must be sufficient to] justify a jury determination that the accused had formed the intent to kill as a direct response to the provocation and had acted immediately,” i.e., without premeditation or deliberation. (People v. Wickersham (1982) 32 Cal.3d 307, 329 [185 Cal.Rptr. 436, 650 P.2d 311], italics added.) Unlike the provocation required to reduce a killing to voluntary manslaughter, which objectively must have been sufficient to have caused an ordinary person to react without reflection, the provocation required to reduce a killing to second degree murder need only have “preclude[d] the defendant from subjectively deliberating or premeditating.” (Hernandez, at p. 1332, italics added; see People v. Fitzpatrick (1992) 2 Cal.App.4th 1285, 1295 [3 Cal.Rptr.2d 808] [rejecting argument that “jury must apply an objective standard of provocation to reduce first degree murder to second degree murder”]; see also People v. Ward, supra, 36 Cal.4th at p. 215 [“The evidentiary premise of a provocation defense is the defendant’s emotional reaction to the conduct of another, which emotion may negate a requisite mental state.”].)
Applying these legal standards in this case, the questions we must resolve are (1) whether a heat-of-passion instruction was required for voluntary manslaughter because a reasonable jury could have concluded that Green’s actions aroused in Wright a passion that would have eclipsed the judgment of an ordinary person (People v. Beltran, supra, 56 Cal.4th at p. 950) and (2) whether a provocation instruction for second degree murder was required because a reasonable jury could have concluded that Green’s actions caused Wright to form an intent to kill upon which she acted immediately, i.e., without premeditation (People v. Wickersham, supra, 32 Cal.3d at p. 329). To answer these questions, we need to consider two sets of facts. The first set, which includes the facts relied upon by the majority in reaching its conclusions, is the “abundant evidence adduced at trial about the acrimonious relationship between [Wright] and Green, particularly concerning their ongoing custody battle over their son.” (Maj. opn., ante, at p. 1483.) The second set is the events between the shot Wright fired into Green’s car and the shots she fired that killed Green. I therefore turn to examine both sets of facts.
A. The Couple’s Acrimonious Relationship and Conflicts About Their Child’s Custody and Rearing.
There is no question that plenty of evidence was presented that Wright and Green had a relationship marked by disagreements and conflict, including *1501 evidence that Wright was specifically angered by Green’s relationship with his new girlfriend and his perceived failure to fulfill his parental responsibilities. But this evidence, in my view, does not constitute substantial evidence upon which a reasonable jury could have concluded that Green’s conduct was sufficiently provocatory to have either roused in an ordinary person a passion eclipsing judgment or caused Wright to kill immediately, without premeditation.
Green and Wright’s last face-to-face interaction before the shooting was when Green picked up their child from Wright’s home on Saturday, February 20. At the first trial, Wright testified that she and Green did not argue then. Wright’s sister Joann, however, told the police that at that time, “ ‘[Wright] was just real talking nasty to [Green] and trying to provoke him to say stuff.’ ” Joann remembered thinking that she hoped Green did not say anything to Wright because, if he were to do so, the couple would argue. No other evidence was presented about any conflict between Wright and Green at the time Green picked up their child or during the rest of the weekend.
Two days later, at around 2:30 p.m. on Monday, February 22, Green returned the child to Wright’s residence, but the two adults had no contact then because Wright was out running errands. The exact time that Wright returned home is unclear, but it was sometime before 5:00 p.m. She testified that when she arrived, she became “concerned” because the child was wearing a diaper instead of a “pull-up.” She was also “concerned” that he was wearing clothes she had not bought for him and that the clothes she had packed were not in his bag, making her think that Green was keeping them as part of a plan to take their child away from her. Joann characterized Wright as being “upset,” but there is no evidence that the child’s appearance provoked an emotion any more intense than that.
Hours later, around 10:00 p.m., Wright left her residence, drove around on the freeway, and checked into a motel near Green’s residence in Pittsburg. She had been drinking and was contemplating suicide, but she testified that she also “wanted to talk to [Green] about his threats [to take their child] away from [her]” and headed to Pittsburg for that reason. She denied, however, that she was thinking about killing Green. After drinking more alcohol, taking “a couple of sips” of antifreeze, and taking Vicodin “to start the process of killing [herself],” Wright fell asleep at the motel.
She eventually woke up and left the motel, still feeling that she needed to talk to Green about his threats to take their child. She drove to Green’s residence, parked her car, drank more alcohol, and fell asleep again. When she woke up, Green had returned. She waited another five minutes, got out of her car, and approached Green’s car.
*1502 Then, around 12:50 a.m. on February 23, Wright fired a shot into the driver’s-side window, shattering it. The evidence .conflicts as to whether Green saw her approach and asked her what she was doing there, a story she recounted to the police but later denied, or whether, as she testified, she shot at him immediately after he began to turn his head. Her testimony about her motive for firing the first shot was also contradictory, but she specifically denied that she was intending to kill Green, thinking of his threat to take their child, or otherwise feeling angry or upset.
In my view, nothing in the evidence up to this point could have allowed a reasonable jury to conclude that the judgment of an ordinary person would have been eclipsed by passion or that Wright formed an intent to kill upon which she immediately acted in response to provocation by Green. Days had passed since the two had had any face-to-face interaction — a period in which the only person potentially being provocative was Wright; hours had passed since Wright had returned home and became “upset” upon seeing their child; and Green was doing nothing except sitting in his car when she approached and shot at him.[1]
The majority points to a line of decades-old cases holding that provocation need not arise from a “sudden and heightened instigative situation[]” but can build up over a period of time. (Maj. opn., ante, at p. 1486.) None of these cases is controlling here, and they do not stand for the proposition, suggested by the majority’s opinion, that people can exist in a prolonged passionate state about a bad relationship and be entitled to a heat-of-passion instruction when tried for killing a former partner whom they seek out or happen upon. It is true that the evidence in these cases showed, as the evidence shows here, a course of provocation that built up over time. But in these cases, unlike here, the built-up provocation culminated in some event involving the killer and victim that — even if insufficient on its own to have necessitated a heat-of-passion or provocation instruction — caused a passionate or immediate reaction resulting in the killing.
*1503 Three of the cases involved a killing that occurred as the defendant and victim were actively fighting. People v. Borchers (1958) 50 Cal.2d 321 [325 P.2d 97] held that the defendant could have killed his girlfriend in a heat of passion roused by a series of events, including his girlfriend’s admitted infidelity, remarks about wishing to be dead, attempt to jump from a moving car, and repeated urgings for him to kill her. (Id. at pp. 328-329.) Immediately before the killing, the victim taunted the defendant by giving him a gun and saying, “ ‘Go ahead and shoot, what is the matter, are you chicken[?]’ ” (Id. at p. 326.) Similarly, People v. Berry (1976) 18 Cal.3d 509 [134 Cal.Rptr. 415, 556 P.2d 777] held that a husband who killed his wife could have been roused to a heat of passion by a course of conduct, including his wife’s sexual taunts and incitements, alternating acceptance and rejection of him, and repeated references to involvement with another man. (Id. at p. 516.) As in Borchers, the victim did something to provoke the defendant immediately before the killing: she asked him if he had come to their apartment to kill her, started screaming even though he said he wanted only to talk, and “struggled” with the defendant after he tried to quiet her. (Berry, at p. 514.) Finally, in People v. Wharton (1991) 53 Cal.3d 522 [280 Cal.Rptr. 631, 809 P.2d 290], the defendant killed his girlfriend by hitting her with a blunt instrument after she threw a book at him during a drunken argument. At trial, the defendant’s theory was that “no single action on the part of the victim provoked the fatal blow but that the book-throwing incident was merely the culmination of [the defendant’s] pent-up frustration and anger emanating from his ongoing dysfunctional relationship with the victim.” (Id. at p. 571.) The court concluded that the jury should have been instructed that “legally adequate provocation could occur over a considerable period of time.” (Ibid.)
In the final case, People v. Bridgehouse (1956) 47 Cal.2d 406 [303 P.2d 1018], the defendant’s wife admitted to the defendant that she had been unfaithful and often discussed the affair with him. (Id. at pp. 407-408.) The defendant sought a restraining order to prevent her from associating with her lover in the presence of her and the defendant’s young son. (Id. at pp. 408-409.) A few days later, the defendant shot and killed the lover when the defendant arrived at his mother-in-law’s home with his son and unexpectedly came upon the lover, who was living there. (Id. at p. 409.) The court concluded that these circumstances constituted “adequate provocation to provoke in the reasonable man such a heat of passion as would render an ordinary man of average disposition likely to act rashly or without due deliberation and reflection [citation].” (Id. at p. 414.)
The continued vitality of People v. Bridgehouse, supra, 47 Cal.2d 406 is dubious since it was the wife’s conduct, not the victim’s, that was provocatory, and the defendant specifically testified that he did not “resent[]” the *1504 victim or “fe[el] angry” toward him.[2] (Bridgehouse, at pp. 411-412; cf. People v. Lee, supra, 20 Cal.4th at p. 59 [provocatory conduct “must be caused by the victim [citation], or be conduct reasonably believed by the defendant to have been engaged in by the victim”].) But even if a course of provocatory conduct by a spouse that culminates in the shock of seeing the spouse’s lover in an unexpected place is sufficient provocation to reduce the killing of the lover to voluntary manslaughter, what happened here is not analogous: there is absolutely no evidence that Green did anything to spark an emotional response from Wright before she shot into his car.
I have no quarrel with the majority that “ ‘long continued provocatory conduct’ ” matters in evaluating whether a heat-of-passion instruction must be given (maj. opn., ante, at p. 1486, italics omitted), but in my view there still must be something when the killing occurs — certainly something more than the victim’s just quietly sitting in his car, by his home, minding his own business — that stimulates the passionate emotion or immediate response of the killer. My reading of the cases relied upon by the majority is that they make the simple and reasonable point that the effect of a victim’s actions before the killing must be considered in the context of any course of provocatory conduct by the victim. This means that an act by the victim that, standing alone, would be insufficient to require instructions on heat of passion or provocation, such as throwing a book (see People v. Wharton, supra, 53 Cal.3d at p. 571), might be sufficient when viewed as the culmination of a history of ongoing conflict and simmering emotions. But by not requiring evidence of any instigative circumstances, the majority essentially holds that such instructions must be given whenever evidence is presented that the killer and victim had a troubled relationship involving charged issues, such as infidelity or child custody. I do not believe that such an expansive holding is either compelled or proper — particularly when, as here, the killer effectively ambushes the victim. (See, e.g., People v. Carasi (2008) 44 Cal.4th 1263, 1273-1276, 1306-1307 [82 Cal.Rptr.3d 265, 190 P.3d 616] [no substantial evidence of provocatory conduct by victim requiring heat-of-passion and provocation instructions where defendant stabbed ex-girlfriend after long period of custody and child-support disputes involving their son].)
*1505 B. Green’s Conduct Between the First Shot and the Fatal Shots.
Since the evidence of Wright and Green’s acrimonious relationship and disagreements about their child up to the time Wright shot into Green’s car would not have allowed a reasonable jury to find provocation sufficient to reduce the killing to voluntary manslaughter or second degree murder, I turn to whether sufficient evidence of provocation was presented based on Green’s conduct between the first shot and the deadly shots. These facts are not the basis for the majority’s conclusion that heat-of-passion and provocation instructions were required, but they are among the facts relied upon by Wright. She argues that “[cjritical issues for the murder charge were whether or not Green launched a deadly attack on [her] after the window was shot out and whether he needed to pursue such an attack if [she] was, as she testified, backing away. Based on the history of violence between the parties, heat-of-passion may have come into play in [her] decision to fire the second and third rounds.” I do not buy it.
Wright testified that in response to the shot into his car, Green jumped out, leaned forward and tried to grab her, swore at her, and swung a fist at her. She testified that in those moments she was afraid but not angry. To conclude that Green’s reaction to having been shot at was sufficiently provocative to require a heat-of-passion instruction turns provocation principles on their head. After all, who provoked whom here? Green’s advances on Wright after she shot at him were perfectly predictable and eminently justifiable. And no evidence was presented that Wright fired the fatal shots for any reason other than Green was advancing toward her.
A line of cases leaves little doubt that the evidence of Green’s actions after Wright shot into his car was insufficient to require a heat-of-passion instruction. In People v. Jackson (1980) 28 Cal.3d 264 [168 Cal.Rptr. 603, 618 P.2d 149], our state Supreme Court held that evidence “that [the] defendant may have become enraged and brutally attacked and killed one of his elderly victims because she was awakened during the burglary and began to scream” was insufficient to show that the defendant killed in a heat of passion caused by sufficient provocation. (Id. at p. 306.) “No case has ever suggested . . . that such predictable conduct by a resisting victim would constitute the kind of provocation sufficient to reduce a murder charge to voluntary manslaughter.” (Ibid.) The court applied the same principle in People v. Rich (1988) 45 Cal.3d 1036 [248 Cal.Rptr. 510, 755 P.2d 960], where it held “that the victims’ resistance to the criminal act of rape [was] ‘predictable conduct’ and [was] insufficient provocation to negate malice” (id. at p. 1112), and in People v. Souza (2012) 54 Cal.4th 90 [141 Cal.Rptr.3d 419, 277 P.3d 118], where it held that the victim’s rising from the couch and reaching for one of the defendants, “one of three armed unknown men bursting into the home[,] *1506 constituted predictable and reasonable conduct by a victim resisting felonious assault, and not provocation sufficient to merit a manslaughter instruction” (id. at p. 117; see People v. Johnston (2003) 113 Cal.App.4th 1299, 1313 [7 Cal.Rptr.3d 161] [no heat-of-passion instruction warranted where the “[defendant was ‘culpably responsible’ for [his] altercation” with the victim; having provoked a fight with the victim, the defendant could not “be heard to assert that he was provoked when [the victim] took him up on the challenge” (original italics)]). Indeed, even if Wright had not provoked Green first by shooting at him, no evidence indicated that Green had a gun or any other weapon when he advanced on Wright. Thus, and at most, he threatened Wright with nothing more than an assault, which is insufficient provocation to warrant a heat-of-passion instruction — even where there is evidence that the defendant and victim have a preexisting acrimonious relationship. (People v. Gutierrez (2009) 45 Cal.4th 789, 798-799, 825-827 [89 Cal.Rptr.3d 225, 200 P.3d 847].)
Whether the evidence of Green’s conduct after Wright shot into his car was sufficient to require a provocation instruction for purposes of second degree murder is a closer call. In People v. Rich, supra, 45 Cal.3d 1036, our state Supreme Court held that analogous evidence was insufficient to require even a provocation instruction, not just a heat-of-passion instruction. (Id. at pp. 1112-1113.) But in determining whether a victim’s resistance is provocation sufficient to reduce a killing to second degree murder, the court stated that “the inquiry is whether the ordinary person would ‘explode’ because the victim resisted” and a “defendant’s subjective response to . . . victims’ resistance” is irrelevant. (Id. at p. 1112.) This statement is at odds with the cases discussed above, including other Supreme Court decisions, establishing that the provocation needed to reduce a killing to second degree murder is judged only subjectively. Moreover, it is unclear whether Rich’s holding on the provocation instruction was based on the principle that a victim’s predictable resistance never suffices to reduce the degree of murder or on the lack of evidence in that case that the victims had resisted. (See id. at pp. 1112-1113.)
Unless People v. Rich, supra, 45 Cal.3d 1036 stands for the principle that a victim’s predictable resistance can never constitute provocation sufficient to prevent a defendant from deliberating and premeditating, it is plausible to suggest that a reasonable jury here could have concluded, if it accepted Wright’s testimony, that Wright did not form the intent to kill until Green advanced towards her, at which point she became scared and immediately shot him. But we need not decide whether a provocation instruction was required on this basis because Wright has not argued this point. In her briefing, she argues that CALCRIM No. 522, the standard instruction on provocation’s effect on the degree of murder, should have been given, but she incorrectly characterizes it as an instruction on voluntary manslaughter, *1507 exclusively addresses the legal standards for voluntary manslaughter, and fails to discuss with any particularity how the evidence could have supported a provocation instruction.
Nor is such an argument the basis for the majority’s conclusion that a provocation instruction was required. The majority concludes that “[t]he evidence adduced at trial about the long-simmering conflict between [Wright] and Green over their son’s care and custody could have raised a reasonable doubt about the existence of premeditation and deliberation.” (Maj. opn., ante, at p. 1495.) I cannot agree that this is a valid reason for concluding that the trial court erred. For a provocation instruction to be warranted, a defendant must kill “immediately” upon “form[ing] the intent to kill as a direct response to the provocation.” (People v. Wickersham, supra, 32 Cal.3d at p. 329.) Here, there was no evidence upon which a reasonable jury could have concluded that Wright shot Green immediately after forming an intent to kill prompted by the couple’s acrimonious relationship.
In my view, when a person ambushes a victim with deadly force (as Wright did), the victim attempts an unsuccessful defense (as Green did), and the attacker responds to the unsuccessful defense by killing the victim (as Wright did), the killer is not entitled in an ensuing murder trial to have the jury instructed on heat of passion or provocation simply because the two had an acrimonious relationship that included disputes about their child. I disagree with the majority’s opinion to the extent it suggests otherwise.
A petition for a rehearing was denied January 6, 2016, and the opinion was modified to read as printed above. Appellant’s petition for a rehearing was denied March 23, 2016, S231963.
Kruger, J., did not participate therein.

 The majority recognizes that “the last provocatory act” possible was Green’s drop-off of their child on Monday afternoon. (Maj. opn., ante, at p. 1490.) It contends that heat-of-passion and provocation instructions were nevertheless required because “the evidence showed [Wright] spent Sunday and Monday stewing in her own juices” and the jury was entitled to determine whether there was a sufficient cooling-off period or whether the provocation prevented Wright from killing with premeditation. (Ibid.) But I view the passage of time between the drop-off and the killing as significant for two reasons. First, even if the drop-off caused a passionate response in Wright, insufficient evidence was presented that she was still under the influence of that emotion when she fired the first shot. Second, even if eight or so hours is not long enough to establish as a matter of law that Wright did not act in a heat of passion, it is long enough to establish as a matter of law that she was not entitled to a provocation instruction because she did not kill as an immediate response to provocatory conduct.